```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                         DALLAS DIVISION

DELROY WILLIAMS,                   §
                                   §
               Plaintiff,          §
                                   §  Civil Action No. 3:04-CV-0162-D
VS.                                §
                                   §
SQUARE D COMPANY, d/b/a            §
SCHNEIDER ELECTRIC,                §
                                   §
               Defendant.          §
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Delroy Williams ("Williams") sues his former employer, defendant Square D Company d/b/a Schneider Electric ("Square D"),[1] contending that it discharged him in retaliation for filing a claim for workers' compensation benefits, in violation of Tex. Lab. Code Ann. § 451.001 (Vernon 1996), and that it discharged him and discriminated against him because of his disability, in violation of the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. §§ 21.001-.556, specifically pointing to § 21.051 (Vernon 1996). Square D moves for summary judgment. For the reasons that follow, the court grants the motion.[2]

---

[1] Square D disputes that Schneider Electric was Williams' employer. The court will assume that, if true, this is a technical defect that can be remedied by amendment, and it will therefore reach the merits of Square D's motion for summary judgment.

[2] Williams filed this suit in state court, initially asserting only a retaliation claim under § 451.001. He later amended his petition to add a disability discrimination claim under the TCHRA. His allegation concerning damages, however, did not change. Square D did not remove this case until after Williams filed his first amended petition. It did so then based on diversity jurisdiction,

I

Square D hired Williams in August 1999 as an Assembler in its Coppell, Texas facility.[3]  Square D is in the business of

---

alleging in its notice of removal that removal was proper "because thirty (30) days have not elapsed since receipt of Plaintiff's First Amended Petition and less than one year has lapsed since Plaintiff filed his original petition." Not. Rem. ¶ 5.  28 U.S.C. § 1446(b) requires, however, that a defendant remove within 30 days of receipt of the initial pleading, or, if the initial pleading is not removable, within 30 days of the defendant's receipt of an amended pleading that makes the case removable.  *See* 28 U.S.C. § 1446(b) (1994).  It appears from the notice of removal that Square D is asserting that it first became aware that the minimum jurisdictional threshold had been exceeded only after Williams added the disability claim in his first amended petition.  But because the allegations of damages did not change between Williams' original and amended petitions, and since Williams had already alleged a retaliation claim, this assertion is questionable. Nevertheless, Williams did not object that removal based on the first amended petition was untimely.  In fact, he does not object to this court's exercising jurisdiction over his retaliation claim under § 451.001, despite the Fifth Circuit's decision in *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112 (5th Cir. 1998).  *See* D. Resp. Order Show Cause at 2 (stating that Williams consented to removal and thus waived his right to seek remand under *Sherrod*). *Sherrod* holds that 28 U.S.C. § 1445(c) prohibits removal of state workers' compensation claims, regardless whether the district court's jurisdiction is based on diversity of citizenship or a federal question.  *See Sherrod*, 132 F.3d at 1118-19.  Accordingly, because the court has subject matter jurisdiction based on diversity of citizenship, and since Williams has waived any procedural defects in removal by failing to move to remand within 30 days of removal, there is no impediment to the court's deciding Square D's motion for summary judgment as to all the claims in the case.  *See* 28 U.S.C. § 1447(c) (Supp. 2005) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

[3]The court recounts the evidence in a light favorable to Williams as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

- 2 -

manufacturing electrical distribution and transmission equipment, and it used the Coppell facility primarily for the construction of commercial switchboards.

In November 1999 Williams suffered an on-the-job knee injury when he stepped on a large bolt. He thereafter applied for and received workers' compensation. In January 2000 he had the first of three surgeries to repair damage to his knee. In March or April of that year Williams' physician, James B. Montgomery, M.D., released him to work with certain restrictions. Square D permitted him to work a light duty job. In October 2001 Shelton Hopkins, M.D. ("Dr. Hopkins") performed a second surgery on Williams' knee. Following that operation, Williams returned to work in 2001 with restrictions. He worked for several months without incident, until he began experiencing buckling problems with his knee. Dr. Hopkins performed the third surgery on Williams' knee in March 2002. Dr. Hopkins released Williams to work on April 30, 2002 with restrictions on kneeling and squatting. During the time Williams was restricted, Square D sometimes permitted him to perform sedentary office work, to complete light duty tasks in the pre-assembly area, and to work four-hour days. On May 14, 2002 Williams received additional workers' compensation benefits as a result of an increased impairment rating, although no new workers'

compensation claim was filed.[4]

On May 29, 2002 Williams attended a scheduled appointment with Dr. Hopkins.  When he arrived, Debbie Buckingham ("Buckingham"), the Square D contract Case Manager for its workers' compensation claimants, was already speaking to the doctor.  A medical form that contained a list of additional physical restrictions and the return-to-work provision had already been completed and was provided for his signature.  These restrictions precluded him from all kneeling, squatting, bending, stooping, pushing, pulling, and twisting, and restricted him from standing more than two hours per day.  According to Williams, Buckingham remarked that "the worst thing that could happen to [him] is [Dr. Hopkins] placed [him] on permanent restriction."  P. App. 2.  Williams also alleges that Buckingham discussed his circumstances with Dr. Hopkins or his staff before his arrival.

John Rivera ("Rivera"), Square D's Human Resources Manager, assessed the additional restrictions placed on Williams and did not

---

[4]On either May 27 or 28, 2002 Williams was involved in an altercation with a coworker after the coworker accused Williams of stealing a pair of pliers.  Hamilton Doak ("Doak"), Williams' supervisor, called the two employees into an office.  John Rivera ("Rivera"), Square D's Human Resources Manager, was summoned.  Williams contends that Doak was a friend of the coworker and misrepresented to Rivera the facts underlying the altercation and, as a result, Williams was suspended for two days, although the other employee was only suspended for one day.  The court need not address this incident specifically, because assuming *arguendo* that Square D showed favoritism to the coworker, this fact would not support the types of claims that Williams asserts in this case.

believe he could perform the job of Assembler. On May 30 Rivera advised Williams that he was not permitted to work and must return his badge (allowing entry to Square D's property). Rivera also suggested that Williams file for short-term disability insurance benefits while the situation was evaluated. Williams requested light duty assignments but was told that none was available. By letter dated May 31, 2002, Rivera informed Williams that he would attempt to find a position suitable for his restrictions. Williams contends that he was forced to then apply for short-term disability benefits to support himself and his family.

On July 2, 2002 Dr. Hopkins added restrictions preventing Williams from lifting more than ten pounds for more than two hours per day, climbing stairs and ladders, and standing or walking more than two hours per day. On September 5, 2002 Dr. Hopkins advised Square D that Williams was not totally disabled from any occupation. In November 2002 Maureen Finnegan, M.D. disagreed, opining that Williams was totally disabled from any occupation and that it was unknown when he would be able to return to work. On December 19, 2002, the day Williams' short-term disability benefits were terminated, Square D advised him by letter that it could not identify a position that would accommodate his physical restrictions presented on May 30, 2002, and that it was therefore terminating his employment.

Williams later filed this lawsuit, and Square D moves for

summary judgment.[5]

II

The court first considers Williams' retaliation claim under § 451.001.[6]

A

Williams alleges in his first amended petition that he engaged in protected activity under § 451.001 by filing a workers' compensation claim following his initial knee injury in November

---

[5]Square D has filed a May 16, 2005 motion to strike portions of Williams' affidavit and to strike in its entirety the affidavit of Eric Robinson ("Robinson").  The court denies the motion as moot.  Even if the court considers the portion of Williams' testimony that Square D alleges should be excluded, it does not alter the court's decision or reasoning.  The court need not consider striking Robinson's affidavit because Williams does not adequately cite it in his summary judgment response.  His only reference to Robinson's affidavit is a general assertion that it "refutes all the allegations of Mary King."  P. Br. at 5.  He does not cite any specific assertion or fact contained in Robinson's affidavit, as required by this court's Rule 56.5(c).  *See* N.D. Tex. Civ. R. 56.5(c) ("A party whose motion or response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence.").

[6]Tex. Lab. Code Ann. § 451.001:

> Discrimination against employees prohibited.
> A person may not discharge or in any other manner discriminate against an employee because the employee has:
> (1) filed a workers' compensation claim in good faith;
> (2) hired a lawyer to represent the employee in a claim;
> (3) instituted or caused to be instituted in good faith a proceeding under Subtitle A; or
> (4) testified or is about to testify in a proceeding under Subtitle A.

1999, hiring an attorney to represent him in that claim, instituting the workers' compensation proceeding, and testifying in that proceeding. He posits that Square D violated § 451.001 when it terminated him in 2002 for the reason that he engaged in the specified protected activities.[7] Square D moves for summary judgment on two grounds. First, it contends that Williams cannot establish a causal connection between filing his workers' compensation claim and his termination. Second, Square D maintains that Williams has not adduced evidence that its legitimate, nondiscriminatory reason for terminating his employment is pretextual.

---

[7] Williams posits at several places in his brief that Square D discharged him on or about May 30, 2002, e.g., P. Br. at 1, although he elsewhere asserts that Rivera terminated him when his short-term disability benefits ended, *id.* at 4, which occurred in December 2002, and that "[i]n December Mr. Rivera terminated Williams," *id.* at 11. Square D maintains that it did not discharge him until December. Neither party explains whether Williams returned to work after May 30, 2002. Williams neither asserts that he was constructively discharged on May 30 nor contests the veracity of his termination letter, which was dated December 19, 2002 and referred to him as a current employee of Square D. Moreover, Williams testified that he received short-term disability benefits through December 2002 and that it was necessary that he be employed by Square D to receive such benefits. Therefore, a reasonable trier of fact could only find that Square D terminated Williams' employment in December 2002.

B

Texas law follows a type of burden-shifting method for determining whether Williams is entitled to prevail on a workers' compensation retaliation claim. *See Anderson v. Corrugated Servs., Inc.*, 2001 WL 585760, at *2 (N.D. Tex. May 24, 2001) (Fitzwater, J.) (citing *Terry v. S. Floral Co.*, 927 S.W.2d 254, 257 (Tex. App. 1996, no writ)). Initially, Williams has the burden of establishing a causal link between his participation in the protected activities, e.g., filing a workers' compensation claim, and Square D's alleged retaliatory action, i.e., terminating him. *See Aust v. Conroe Indep. Sch. Dist.*, 153 S.W.3d 222, 227 (Tex. App. 2004, no pet.) (citations omitted). "This causal connection is an element of the employee's prima facie case, and may be established by direct or circumstantial evidence." *Terry*, 927 S.W.2d at 257. Williams need not show that he was discharged solely because he filed a workers' compensation claim, but he must demonstrate that filing the claim was at least a determining factor in his discharge. The causal link that Williams "must establish at the prima facie stage consists merely of establishing the historical facts that the employer was aware of the protected activity and that the employee was subsequently terminated." *Anderson*, 2001 WL 585760, at *3.

Once Williams establishes this link, Square D has the burden of rebutting the alleged discrimination by showing it had a

legitimate reason for terminating his employment. *See id.* at *2. If Square D meets this obligation, then, to survive summary judgment, Williams must produce controverting evidence of Square D's retaliatory motive. Specifically, he must show that he would not have been discharged but for his assertion of a workers' compensation claim. At the summary judgment stage, Williams need only present evidence that raises a genuine issue of material fact. *Id.*

C

Assuming *arguendo* that Williams has adduced sufficient evidence that would permit a reasonable trier of fact to find a causal connection between his compensation claim and his discharge, the court must determine if Square D has proffered a legitimate, nondiscriminatory reason for terminating his employment. Square D maintains that it discharged Williams because he could not perform the job of Assembler, not because he filed for workers' compensation benefits. "In Texas, an employer is permitted to terminate an employee who sustains a job-related injury if it ultimately appears that, due to the nature of the injury, the employee can no longer perform the essential functions of his position." *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 590 (5th Cir. 1995) (per curiam) (addressing § 451.001 claim). Specifically, Square D points to Williams' deposition testimony that the Assembler position requires, *inter alia*, bending,

kneeling, and standing for three to four hours per day. The restrictions that Dr. Hopkins imposed on May 29, 2002, however, precluded Williams from bending or kneeling for any period of time and from standing more than two hours per day. The court concludes that Square D has satisfied its burden of production by proffering evidence that it terminated Williams' employment because he could no longer perform the essential functions of the job of Assembler.

D

The final question is whether Williams has adduced evidence that would permit a reasonable trier of fact to find that Square D's proffered reason for terminating him—that he could not perform the duties of the Assembler job—is pretextual.

Square D argues that there is no evidence to support Williams' assertion of pretext. Because it will not have the burden at trial on this component of Williams' claim, Square D can obtain summary judgment by pointing the court to the absence of evidence to support it. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If it does so, Williams must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id*. at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076. An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Square D correctly points out that Williams has adduced no evidence that, assumed to be true, controverts its articulated reason for terminating him.  Williams asserts that Square D's sudden inability to find light duty work for him after he received Dr. Hopkins' May 29, 2002 impairment rating—work that had been available to him for several years following his injury—is evidence that the stated reason for discharging him is pretextual.[8] This fact alone, however, is insufficient evidence to permit a reasonable finding of pretext because, as Williams conceded in his deposition testimony, the light duty assignments he performed between November 1999 and May 2002 were temporary positions.  *See Urquidi v. Phelps Dodge Ref. Corp.*, 973 S.W.2d 400, 405 (Tex. App. 1998, no pet.) ("In the absence of any policy or practice to the contrary, the company's refusal to create a light duty job does not give rise to an inference of discrimination or retaliation.").  In his brief, Williams cites his affidavit as evidence that Square D employed Assemblers who performed only light duty work.  Even if the affidavit included such an averment (which it does not), Williams has not identified any specific individuals or detailed

---

[8]Although the court has not reached its decision today on this basis, it notes that the fact that Square D retained Williams as an employee for several years following his November 1999 injury tends to undercut rather than support his contention that it terminated him for pursuing a workers' compensation claim.

their medical conditions so as to show that their circumstances are sufficiently comparable that it can be reasonably inferred that Square D's reason for terminating him is pretextual.

Williams also alleges that Square D's proffered reason for terminating him is pretextual because Square D (1) failed to produce evidence that he was unable to perform as an Assembler and that other work was unavailable and (2) relied on evidence from interested witnesses.  To satisfy his burden under *Celotex*, however, Williams must designate specific facts that show there is a genuine issue for trial, e.g., that support the premise that he could perform the job of an Assembler. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) ("Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment.")

The court holds that a reasonable jury could not find that Square D's proffered reason for terminating him is pretextual.  The summary judgment evidence shows that Williams suffered an on-the-job injury in November 1999.  Square D provided alternative work for Williams for over two years, during a period when he underwent three surgeries to his knee.  It did not discharge him until a physician placed him on restrictions that prevented him from performing the job of Assembler—the position for which he was hired.  The undisputed evidence is that he could not perform the

work of an Assembler.[9]

Accordingly, the court grants Square D's motion for summary judgment on Williams' claim for workers' compensation retaliation under Tex. Lab. Code Ann. § 451.001.

### III

Williams contends that Square D terminated him and discriminated against him because of his disability, in violation of § 21.051[10] of the TCHRA. Square D maintains that it is entitled to summary judgment because Williams cannot adduce any evidence that he is disabled.

---

[9] Moreover, Williams' citations to *Luna v. Frito-Lay, Inc.*, 726 S.W.2d 624 (Tex. App. 1987, no writ), and *Schrader v. Artco Bell Corp.*, 579 S.W.2d 534 (Tex. App. 1979, writ ref'd n.r.e.), do not help him satisfy his obligation to show pretext. Both cases involved employees who were discharged after they had been cleared to resume work without medical restrictions. *See Luna*, 726 S.W.2d at 625-26; *Schrader*, 579 S.W.2d at 536. Williams does not argue, nor does he introduce evidence, that he was released to return to his job without restrictions.

[10] Tex. Lab. Code Ann. § 21.051:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

A

Williams has not responded to Square D's summary judgment motion concerning his claim that Square D terminated or discriminated against him because of a disability; he argues instead that it failed to reasonably accommodate his disability, in violation of Tex. Lab. Code Ann. § 21.128(a) (Vernon 1996).[11] Although the court cannot enter a partial "default" summary judgment, *Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), his failure to respond in this respect means that he has not carried his burden as the nonmovant. He "is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). He therefore has not gone beyond his pleadings and designated specific facts showing that there is a genuine issue for trial as to these components of his discrimination claim. *See*

---

[11]Tex. Lab. Code Ann. § 21.128(a):

> It is an unlawful employment practice for a respondent covered under this chapter to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee or applicant for employment, unless the respondent demonstrates that the accommodation would impose an undue hardship on the operation of the business of the respondent.

- 14 -

*Celotex*, 477 U.S. at 324; *Little*, 37 F.3d at 1075. Accordingly, the court will limit its discussion to Williams' reasonable accommodation claim.[12]

B

The obligation of an employer to reasonably accommodate a disability requires that the employee have a disability. The applicable statute defines "disability" as, *inter alia*, "a mental or physical impairment that substantially limits at least one major life activity of that individual" or a "record of such an impairment." Tex. Lab. Code Ann. § 21.002(6) (Vernon 1996 & Supp. 2004-05).[13] "[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of

---

[12]The conclusion that Williams has failed to adduce sufficient evidence of a disability under the TCHRA also precludes the disability discrimination claim that he has failed to address adequately in his brief. *See Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 796 (Tex. App. 2005, no pet.) ("To prove a violation of section 21.051 on the basis of disability, an employee must show . . . [he] is disabled. . . .").

[13]Although § 21.002(6) also defines "disability" as being "regarded as" disabled, that definition is inapplicable in these circumstances. *See* Tex. Lab. Code Ann. § 21.002(6). This is because an employer's duty to provide a reasonable accommodation "'arises only when the individual is [actually] disabled; no such duty arises when the individual merely is "regarded as" being disabled.'" *Columbia Plaza Med. Ctr. of Fort Worth Subsidiary, L.P. v. Szurek*, 101 S.W.3d 161, 169 n.4 (Tex. App. 2003, pet. denied) (alteration in original) (addressing disability discrimination claim under TCHRA) (quoting *Cannizzaro v. Neiman Marcus, Inc.*, 979 F. Supp. 465, 475 (N.D. Tex. 1997) (Solis, J.) (addressing claim under Americans with Disabilities Act of 1990)).

central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (addressing Americans with Disabilities Act of 1990 ("ADA")).[14]  Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Martin v. AIMCO Props. L.P.*, 2002 WL 1575411 (N.D. Tex. July 16, 2002) (Lynn, J.) (internal quotation marks and citations omitted).  It is the plaintiff's burden to present evidence substantiating the disability.  *Id.*

Square D posits that Williams' knee injury does not substantially limit him with respect to major life activities, pointing as evidence to several portions of Williams' deposition testimony.  Williams testified that his knee injury prevents him from activities such as running and playing soccer and that, although he can walk up stairs, he does so with a limp and sometimes uses a cane.  *See* D. App. 42, 44-45.[15]  Williams also

---

[14]Federal court decisions and administrative regulations concerning the ADA guide the court's interpretation of the definition of "disability" on Williams' claim under the TCHRA.  *See Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 382 (Tex. 2004).  One of the express purposes of the TCHRA is to "provide for the execution of the policies embodied in . . . the Americans with Disabilities Act of 1990."  Tex. Lab. Code Ann. § 21.001(3) (Vernon 1996).

[15]Williams' testimony states, in relevant part:

> Q: Anything else that you can think of that you cannot do because of your knee, in addition to running or playing soccer?
> A: Well, I can't do certain things that my daily life, that the daily life would do, like

stated that he typically is able to stand for four to five hours and has no problems sitting, driving, eating, taking care of himself, bathing, or brushing his teeth.  *Id.* at 44.

Williams does not directly respond to Square D's argument that he has failed to adduce evidence of a disability, nor does he cite any proof that would permit a reasonable jury to find that his knee injury meets the definition of a disability.[16]  Although he cannot run or play soccer, in these circumstances, neither constitutes a

---

> —— I don't know.  Like I say, I can't move
> around for a long time.
> Q: What else?
> A: That's basically it.

D. App. 44-45.

[16]The relevant part of Williams' brief states in its entirety:

> 1. <u>THE DEFINITION OF DISABILITY, BOTH ACTUAL AND PERCEIVED, PROVIDES PROTECTION FOR PLAINTIFF UNDER THE TEXAS COMMISSION ON HUMAN RIGHTS ACT</u>
> Defendant's initial argument related to dismissal of Plaintiff's disability claims revolves around whether Plaintiff's medical condition provides protections to him under the Texas Commission on Human Rights Act ("TCHRA").  The TCHRA provides that it is illegal to discriminate against someone with a disability, and disability is defined as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment."  TEX. LABOR CODE. §§ 21.001 & 2(6).

P. Br. at 16-17.

- 17 -

"major life activity" within the meaning of the TCHRA.  Moreover, although walking is a major life activity, Williams' limp and occasional use of a cane do not rise to the level of a substantial impairment of his walking ability under the TCHRA.  *See Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (per curiam) (holding that limp from childhood injury causing "moderate difficulty . . . while walking does not rise to the level of a substantial impairment"); *Martin*, 2002 WL 1575411, at *3 (holding that inability to walk or climb stairs for extended periods of time without resting did "not rise to the level of a substantial limitation upon the ability to walk").  Finally, Williams has not established that he is substantially limited in his ability to work.  Williams has failed to adduce any evidence that he cannot work in general or that he has an inability to work in a broad range of jobs.  *See Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 797 (Tex. App. 2005, no pet.) (observing that in order to prove that impairment substantially limits ability to work, claimant must show inability to work generally in broad range of jobs, not just specific job).[17]  To the contrary, Williams testified that he can work in light duty, sedentary jobs.   The court therefore concludes that he has failed to create a genuine issue of material fact that he is disabled under the TCHRA, and Square D is

---

[17]It is insufficient that Square D effectively concedes that Williams cannot perform the specific job of Assembler.

- 18 -

entitled to summary judgment.[18]

                              *   *   *

For the reasons explained above, the court grants Square D's motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED.**

September 13, 2005.

                                          _____
                                        SIDNEY A. FITZWATER
                                        UNITED STATES DISTRICT JUDGE

---

[18]Because the court grants summary judgment on the basis of Williams' failure to adduce evidence that he is disabled, it need not address Square D's other arguments.

- 19 -